and Thomas Powell, 17 dance, 11. Good morning, Justices. Good morning. Good morning, Your Honor. Please state your names for the record and also the parties involved. The parties you represent. Yes. My name is Paul Feinstein. I represent the appellant, Joanne Farrell. And my name is Judd Feinburn. I represent the respondent, Appellee Thomas Howe. Okay. Fifteen minutes apiece. You want some time for rebuttal? Five minutes, please. Five minutes? Okay. Thank you. Are you ready to proceed? Yes. May it please the Court, again, my name is Paul Feinstein. I am the attorney for the appellant, Joanne Farrell, in this post-judgment dissolution of marriage matter. Justices, the question before this Court today, based on the record, is did Joanne Farrell knowingly waive her rights to a portion of the $7,500 per month disability benefits that Thomas Howe is presently receiving? And does the parties' settlement agreement unambiguously allow him all his disability benefits as a matter of law? Because that's what the trial court held. So what is the petitioner's entitlement or right to this fund, this $7,500 that you referred to? I mean, she waived maintenance. She waived maintenance. Right. He hasn't retired yet. Correct. So what is her entitlement or her right to say, I should have part of this? The disability benefit, as a matter of law, is marital property. Unless the disability benefit is specifically waived under the MSA, then she has not waived it, and we also have an omitted assets clause saying if anything here is not mentioned and is later discovered, it's to be divided in the same way, Justice, which was 50% of the marital portion. So that's the answer. She would get 50% of the marital portion. So because that provision wasn't in the marital settlement agreement, therefore that entitles her to the disability benefit? It's really two things, Justice. Number one, that she was given half of the marital portion of his pension, and under the case law that we've cited, the three cases of Marshall, Benson, and Schultz, when you say pension debt includes disability benefits, as I'll get into the two cases that counsel cites, Davis and Belk, basically go the other way and say it isn't included. And, again, since it isn't mentioned under the waiver cases that I've briefed and can go into, there has to be a clear and specific waiver of that right. Nowhere in the MSA. Are these alternative arguments? One, it was granted in the provision dealing with the pension, or if we find that it wasn't, the disability payments are not to be considered a pension payment under that clause, we would need to address whether she had waived disability payments? It is, Justice. It is, by necessity, because she was either granted it by the MSA, or if neither party was granted it, that's the issue, and then did she waive it? I guess my question is a little more basic. She waived maintenance. There was a provision in the judgment with regards to child support, right? There was also a provision in the judgment with regards to entitlement to benefits when the respondent retires. So I guess my question is her claim to the $75,000 is based on what? If it's not maintenance, if it's not child support, and if it's not a retirement pension because he hasn't retired yet, what's her claim to it? It is, Justice, it's a marital asset that either if you follow Benson, Schurz, and Marshall, that is encompassed within when she gets half the pension, that includes half the disability, or if you hold as a matter of law the other way, that that doesn't include it. Remember, we have the omitted property clause saying, well, if it isn't mentioned, it's still to be divided. This is a collaborative case, and all the assets are supposed to be discussed. So she retires just because it's part of the pension. Because alternatively, as I tell Justice Roach, it's either as a matter of law part of the pension, or it's an undisclosed asset. Okay, but the pension isn't attachable yet because he hasn't retired. He has chosen not to retire. Right. He won't have to retire because under the fund, the fund states specifically that by the age of, I think, 63? 63, sir. He has to retire. Absolutely, Justice. So at 63, she's entitled to it, but why is she entitled to it now? She is. Because it's part of the marital property distribution, again, that was not waived, and that when you say pension, you are including disability under the case law. Can I ask a question? I don't have it right in front of me, but I thought the agreement said that she was entitled to one half of his pension, and that he was entitled to everything else in his fireman's fund benefit, everything else. Wouldn't that include his disability? And if he had not become disabled, he would have continued to get his salary, and she would not have been entitled to any of his salary. Isn't this just a substitute for his salary because he became disabled? I do have the language, Justice. I mean, it says a number of things, which is why we say it's many and numerous. That's my understanding of what I read. All right. Well, it says she will receive the specific property allocated to her, and then there's the Exhibit A that has, it's called a couple of different things. In this case, it's called husband's fireman's pension worth $389,000, and then the mere portion of husband's pension from the fireman's annuity and benefit fund. So prong A of the argument is when you say husband's pension, that includes disability benefits because it wasn't specifically stated elsewhere. Doesn't it state elsewhere that he's entitled to everything else in his pension fund? It says anything that has not been assigned. Our argument is it has been assigned because disability is part of pension under the law. Otherwise, we submit that the language of the agreement, Justice, is just not clear and specific enough. Under Illinois law, which includes the First District case of Myers, that a waiver has to be clear and specific. So I'll grant you, if it had said he gets disability benefits, that would be it. There would be no argument that disability is not mentioned one time. So we can't just have an assumption that she waived something, but she may not have even known what it was. All right. So just so we're clear here, so are you saying that this is a disability pension or a disability benefit? It's in the nature. I mean, it's called. Well, what is it? Is it a disability pension that you're saying that she's entitled to or a disability benefit? It's, I believe, the better way. So we're not going to call provisions here because there's lots of fluid. I know. That's exactly true, Justice. So this is an ordinary disability under this particular fireman's case. It's a statutory right that he has. And is it the ordinary disability? It's called duty disability. Duty disability. Yes, it is, which is under the statute. And the case law in Illinois has been consistent that disability benefits, disability pensions, are marital assets. And that's one of the things that had to be, should have been, or was divided. So the court does have the opportunity to make first district law. And we do need a definitive statewide rule because although there are different pensions and different counties and so on and so forth, we have one marital property law in Illinois, and that's Section 503. Under Section 503, Joanne had a species of common ownership in the marital property. So even though it's in Thomas' name, it's her property as well. That's why there has to be a clear and specific waiver. Otherwise, there's not a waiver. As discussed, the five main cases are Benson, Shores, Marshall, Davis, and Belk. As I've set forth in the brief, I believe that Benson from 2015 is the most similar and appropriate case. Interestingly, even in Davis and Belk, which are the cases Thomas relies on, the courts held the language of the agreement to be ambiguous, which is probably the case here. Also in Davis and Belk, the husband was not yet eligible for retirement, whereas here, and in all three cases, he was eligible. The Shorts case says that that's a key difference. I thought he didn't retire yet. He hasn't retired yet. He had a choice, but as the record indicates, he had put in for retirement the year before. Then the injury happened, and he had a choice of taking disability or retirement. He had told my client he was going to be taking retirement, and she was going to be getting. In fact, there was a specific dollar amount, $18.57 a month. Then he chose. He said, well, disability is better for me, so I'm going to take it. That's where she is prejudiced because she could now be taking a portion of the retirement because he is eligible. In fact, that was in process. Isn't the question here not so much whether he's eligible or not, but whether or not he is retired? Because if he is retired, then the provision pertaining to the pension will be applicable. If he's not retired, then that provision isn't applicable here. The question, though, Justice, on this de novo review is the party's intent based on this document. And that's what Judge Katz said here. She looked at it, and she specifically said that based on the party's intent from the settlement agreement, was that she wasn't entitled to the disability benefits. She specifically said that disability is not mentioned here anywhere. That means he gets it. Right. Now, but that's contrary to, first of all, Section 503, which gives her a species of common ownership in the property, even though it's in his name. And it's also contrary to the waiver cases, the Myers-Fuller family holdings that I cited. Before we start looking at statutes and other provisions, we have to look at the agreement itself. Right. Because what we're basically looking at is what is the party's intent before we go beyond that. Right. And Judge Katz said that there wasn't any intent here that she was supposed to get disability benefit. That's what she said. Right. Which we submit under de novo review. The court is as qualified to read and interpret the document as the trial court. Was he eligible for retirement? He was. In fact, as I said, he had put the paperwork into play in 2013, and then the injury took place. So, yes, he was eligible, which is, I believe, an important distinction in the case law, because in the cases that I've relied on, same facts. He was entitled to retirement, and in Davis and Belk he was not. Also in Davis and Belk, they didn't have a hidden assets clause like we have here, which is very important. The judge didn't address that. And a representation that there are no other assets, which we had in the Exhibit A. Those cases also didn't even discuss the waiver issue. As I said, they're not collaborative cases. So as a result, another thing that the judge did was use some kind of a fairness analysis, but rather than just determining the intent of the parties. The ultimate ruling was, in fact, unfair to Joanne because she received zero of what was a marital asset. Thomas wants you to adopt a hyper-technical analysis to defeat Joanne's rights. This is, as I say, Justice, it's a collaborative agreement. Illinois has now enacted the Collaborative Process Act. This process won't work unless there's transparency and clear disclosure in terms of assets. You know, you rely on Schurz and Benson, am I correct? Schurz, Benson, and Marshall, yes. Well, let me just concentrate on Schurz and Benson. Okay. Now, Schurz and Benson, if I'm reading those correctly, the court comes to the conclusion that if the benefit that's being received can be viewed as compensation as opposed to a retirement payment, then it would be construed against you, right? I mean, I don't see how Schurz and Benson clearly holds in your favor. Except that the recognition is that these are marital assets. These are not income. Okay. This is not a component of maintenance. You need to set out clearly the waiver of maintenance was based upon, and it says it specifically, includes her marital property, including that which is awarded to her. So the only reason she isn't getting maintenance besides employment is she's getting assets out of the case. This is a key asset. It's a lot of money that she's not getting. So it's not really maintenance. Okay. Let me just say, it goes to your argument that if you have two, now that you've made it clear, there's two alternative arguments. Yes. One is that it's awarded to you or to the wife because of the pension provision in the agreement. Yes. But Schurz says that a similar clause, they kind of find that there's two alternatives, right? It's either, one, it covered it. Let me try again. All right. Schurz also says that when the ex-husband is entitled to receive retirement pay, which is the distinction I talked about, and is receiving disability income instead, then a settlement agreement providing her a portion of retirement benefits can reasonably, can be interpreted the other way. It's not the label. But Schurz, he was already getting his retirement benefits. I mean, that's what the court determined. Basically, that's what he was doing. Even though it was titled as one thing, he was actually getting his retirement benefits. But it was disability. That's what I'm saying. It was titled as disability, but the question was in the court of justice was the fact that he was really getting his retirement benefits, which she was entitled to. That's the nature of it. It's the same argument. It's apples and oranges. It's apples and oranges. You can't put apples and oranges together. Well, except that that case and Marshall and Benson say that the apples are the oranges, or the apples are contained within the oranges. When you're talking about a benefit plan, that this is part of it. And again, all these cases, and the alternative is they didn't have omitted property clauses, which we had. So one way or the other, even if, justice, as you say, it's retirement, it's not disability, then that's something. It should have been listed in the Exhibit A. It should have been specified, and it should have been waived. And it was that. So we're on a question of disagreement. Sure. So you're saying that she's entitled to this because it's part of the marital assets. Yes. Personal property? What is it? How would you define this? It's in the nature of a statutory right. How would you define this in terms of, when we're to look at this marriage settlement agreement, what are we looking at? Her entitlement to the personal property that was part of the marriage? Or what are we looking at? Attention to property. Right. What are these assets? Personal property? It includes, well, this was a statutory right to money. Oh, I know that. But I'm talking about the assets themselves. All right. If we were to look at the agreement, how does the agreement define this particular type of asset, even though it doesn't say disability benefits or disability payments? How would we define this? Well, our first position is that it's covered in the pension and that the marital portion of that has been divided. He's getting the non-marital portion. That's the, quote, unquote, everything else that you mentioned before. There's a premarital component. There's a post-divorce component. That's what he would get. What is this property, though? That's what I'm trying to grasp here. What is this asset? What is it? It's not real property? It's not real property. So is it personal property? Personal property, depending, Justice, on how you define it. I mean, it's the right to money just like a deferred compensation or a retirement benefit. He has a right by virtue of his employment under these circumstances to this money. He's being paid this money. It's marital property, and so she owns it as well as him, even though title is in him. But under the marital property law, she has the species of common ownership. That's the nature of her right. And everything else is divided under Exhibit A with the representation. I'll automate Steen on my briefs unless the Court has any additional questions. I appreciate all the good questions. For all these reasons, Joanne respectfully prays that the Court reverse or vacate the orders appealed from, and I do will that the agreement unambiguously gives her the right to 50 percent of the marital portion of the disability benefits or will the agreement is ambiguous, reverse and remand for an evidentiary hearing. Thank you, Justices. I suddenly realized. I'm sorry. I have some questions. Sure. I've got so many questions. Yes. The disability benefit that is being received, is that in any way reducing future pension payments? That's a good question. That is a good question. And I don't think that the record necessarily reflects that. But to answer that question as best I can, his taking the disability now instead of the retirement, which he's entitled to, is obviously reduces what she's available to get because she would be getting it now. Well, the number that was given to the pension benefit in Exhibit A, did that anticipate that the husband would retire at age 63? Exhibit A divides it. It has a number. It does. Of course, there isn't parallel evidence presented as to how they came to these numbers or those sorts of things. It simply divides the benefit and indicates that she's to have half of the marital benefit. And kind of a similar question, the time period where he's receiving this disability, it still counts as his years of service in a future calculation of the retirement? Justice, I believe that it does under the statute. I can't give you 100 percent clear answer on that. That was my recollection on that. So there really isn't an argument, or at least not one that's factually developed, that what he's doing is diminishing the pension. He's just delaying the receipt of it. He's delaying it. And, of course, factually we weren't allowed to develop that because the judge didn't want to hear evidence in case that would be determinative in some way or the other. Otherwise, again, we're just looking at the document. All right.  So just to follow up on Justice Trotsky's question, Exhibit A specifically sets out an amount with regards to the pension, then how much the petitioner is supposed to receive and so much the respondent is supposed to receive. But you're not clear as to whether or not if that was factored from the point in time when he's 63 on? The evidence as to that is not in the record. No, I know that. I'm just talking about in terms of the settlement agreement. When we look at the settlement agreement and they specifically broke down, you know, Thomas is going to receive so much, Joanne is going to receive so much from a net value of the pension. So my question to you is, is that then from, was that factored in from the age of 63 on? I don't know the answer to that, Justice, because it's not in the record. There's a number that was arrived at and it's split 50-50. Okay. Did you not represent Joanne during this part of the court? I did not represent her during the collaborative part of the judgment. Okay. Thank you. Thank you. Thank you. Good morning, Your Honors. Good morning. Judd Feinberg on behalf of the respondent at the Lee. May it please the court. Before I begin my argument, I'd like to address some of the questions the court had for the appellant. Most recently, the court just for recording purposes, if you could keep your voice up a little bit louder because the mic doesn't amplify, but it records. Of course, Your Honor. Thank you. The court inquired whether or not the receipt of the disability benefits diminishes the pension. And the answer to that, pursuant to statute under the pension code, is absolutely not. There is no diminishment whatsoever in the disability benefits or the share of the disability benefits that Joanne will receive as a result of the marital settlement agreement. In fact, by remaining on disability benefits, it's quite possible that the benefits that Joanne will receive might increase. The retirement pension is calculated based in part on the participant's salary. I believe Mr. Howe is a lieutenant grade in the Chicago Fire Department. And if there's a pay increase to all members of the lieutenant grade to that pay rate, raising all of their salaries, it will raise his salary, which by virtue of the Hump Formula, which will determine what actual amount Joanne will receive from the pension, may actually increase her benefit. So she actually derives a direct benefit from Mr. Howe remaining on disability through the pension service. But it may in the long run diminish the number of years that she could have received a percentage of the pension. But not necessarily, Your Honor. If Mr. Howe were not disabled and he could continue to work today, the same result would occur. There is actually no difference whatsoever by being on disability or had he continued to work. It would be like saying, well, Mr. Howe, who is currently 62 years old, Mr. Howe, you're 62, we're going to ask you to retire now so that Joanne can receive her share of the pension. He has no obligation to do so. That's nowhere in the settlement agreement or in any other document in the record before us. So there is really no distinction between his receiving the disability benefits today or continuing to work as an active duty firefighter. Pursuant to the annuity fund, the language in the fund, at 63, he doesn't have an option. He has to retire. Correct. It's actually the Chicago Municipal Code that sets out the compulsory age of retirement, which is 63. He'll turn 63 in 2018. And then the language in the pension code states that a person is entitled to active duty disability benefits. It does not use the word pension. It uses the word specifically duty disability benefits until the compulsory age of retirement, at which point he must retire. He's no longer eligible to receive the disability, but then he will begin drawing on his pension, at which point he begins drawing on his pension. Ms. Farrell will receive the same 50% of the marital portion that she had or was awarded under the marital settlement agreement. I'd like to also address Justice Lankin's question. You recalled some language in the settlement agreement that talked about she gets the pension, he gets everything else. Well, that language is in paragraphs 3.1D and 3.2D of the marital settlement agreement. So paragraph 3.1D of the marital settlement agreement, that divides property. 3.1D awards certain property to Joanne. And it states, and I quote, this distribution includes the execution of a quidro awarding one-half of the marital portion of a husband's pension from a fireman's annuity and benefit fund. Paragraph 3.2D, its corollary, awards property to Thomas and states, and I quote, the husband shall retain all the remaining interest in the fireman's annuity and benefit fund, not conveyed above. So Joanne was absolutely correct when you recalled that provision. Now, we need to interpret the plain and ordinary language of the settlement agreement. That's the best evidence of the intent of the parties here. With the plain and ordinary language, the plain and ordinary meaning of the term pension is going to be a retirement pension. That's how it's commonly and colloquially known. There's no definition section of this contract that otherwise defines it. It's how Black's Law Dictionary defines it. It's clear that when the parties entered into the settlement agreement, they understood that the fireman's annuity and benefit fund was an interest that was possessed and that that interest included a pension as well as other things. The parties specifically withdrew or explicitly included only the language of pension being awarded to Joanne rather than one-half of the marital portion of the entire interest in the fireman's annuity and benefit fund. Or benefits. Or benefits, absolutely. And we have to ask ourselves, why did they use that language specifically? Well, the only reasonable interpretation is they used that language specifically because it only intended to divide the retirement pension, and that they did intend to award Mr. Howe all remaining interest, which would include the disability benefits that he's currently receiving. It's also interesting to note that they included in that section the method by which the division would be accomplished. It didn't just award Ms. Farrell one-half of the marital portion of the pension. It said the execution of a qualified heir in a domestic relations order, a quidro. And there's a statute on quidros, and that statute says that a quidro cannot be used to divide disability benefits. Now, Ms. Farrell argues in her brief that this court could order that the payments be made triangularly. And a court could order that, potentially. But the court can't replace or rewrite the agreement. The agreement only includes the execution of a quidro. Had the parties intended to divide the disability benefits, and understanding they were both represented by counsel when they entered into this agreement, understanding that a quidro could not be used to divide disability benefits, they could have included language in the agreement to say, if the quidro cannot do this, we'll pay it triangularly, we'll pay it by some other mechanism. But the lack of that language in the settlement agreement, I think, is instructive, and it shows that that was never something that was contemplated. It also shows that disability benefits were never contemplated, because the term disability, whether it's disability pension, benefits, the word disability at all is included nowhere in this agreement whatsoever. Now, Ms. Farrell also argues in the alternative that, you know, if the court decides that this isn't something that was specifically awarded, it's covered under this discovered property provision. But the Fireman's Annuity and Benefit Fund is expressly included in 3.1 and 3.2D of the Marital Settlement Agreement. The right to these disability benefits comes from that interest in the Fireman's Annuity and Benefit Fund, and from no other source. This was an asset that was expressly included in the Marital Settlement Agreement, twice. To argue now that this is somehow some discovered property that she wasn't aware of is a specious at best. Well, what about their argument that it falls under the catch-all provision in the Marriage Settlement Agreement? Well, so that's the discovered property provision that he's talking about, and the Fireman's Annuity and Benefit Fund isn't like post-discovered property. They knew it existed at the time it was actually included in the settlement agreement. But even still, in going towards his alternative argument concerning waiver, there is actually an express waiver of an expectancy interest in property not awarded to a party by this agreement. So, as I mentioned before, paragraph 3.2D awards all remaining interest in the benefit fund, right? We will argue that that includes the disability benefits. Now, paragraph 10.2 of the Marital Settlement Agreement provides that the parties are expressly waiving any interest that was not awarded to them in any expectancy that the other party may have. So, counsel argues, or excuse me, the appellant argues in her brief that there's a two-prong test that needs to be met in order to determine whether the waiver is effective. That test is raised in In Re of the Marriage of Velazquez. The first prong to that test is whether the actual interest or asset is included expressly in the agreement. Well, here we have the Fireman's Annuity and Benefit Fund included at least twice in this Marital Settlement Agreement. So, that first prong is met. The second question is whether there's an express waiver of an expectancy interest. Well, that's also included in paragraph 10.2. This means that Ms. Farrell's waiver of her expectancy interest in the disability benefits has been and is effective. Now, In Re of the Marriage of Velazquez is actually somewhat on point or similar to the case here where in Velazquez there was a contingency beneficiary interest in a land trust. That land trust was actually included in the settlement agreement. And then there was another paragraph in the settlement agreement that provided similarly to here a waiver of any expectancy in property not awarded to that spouse. And the appellate court in Velazquez found that that waiver as to the contingency beneficiary interest in the land trust was effective because the asset was listed and expectancy interests were waived. Now, in Velazquez there was another asset, another expectancy interest in a life insurance policy. The life insurance policy wasn't listed, so the waiver of that expectancy interest wasn't effective. But because the Fireman's Annuity and Benefit Fund is listed here, it does serve to be an effective waiver. Can I go back to the listing? By all means. All right. The language in 3.1D says a pension from the Fireman's Annuity and Benefit Fund. Are we to read that to be a listing of the disability benefit from the same fund? No, Your Honor. That's to be read and should be read as only the retirement pension. All right. But you're saying it's listed, that it was mentioned, that the Fireman's Annuity and Benefit Fund has been mentioned. Yes. But when it's being mentioned, it's in relation to the pension from that fund. Well, the pension from that fund is listed in 3.1. But in 3.2D, it says all remaining interest in the Fireman's Annuity and Benefit Fund. That encompasses all interest, all benefits, everything that could be and is provided from the Fireman's Annuity and Benefit Fund. That encompasses the disability benefits. One of the things Judge Katz ---- But that's not, I believe that counsel before you said that that means the non-marital part of the funds. It means that and all remaining interest. So that is purposely expansive and broad language because the parties understood and intended that everything in the Fireman's Annuity and Benefit Fund, whether it be the non-marital portion of the pension, whether it be the disability benefits, whether it be something else, survivor's benefits or anything else that the Fireman's Annuity and Benefit Fund may provide, will be awarded to Mr. Hunt. The parties could have expressly stated that he receives the other half of the marital portion of the pension plus any non-marital portion of the pension. They didn't do that. They purposely entered this broad and all-encompassing language because they knew and had reason to know that the Fireman's Annuity and Benefit Fund included more than just a retired pension. It's also important to note, Your Honors, that the Court has to construe this agreement to avoid an unreasonable result. In the case here, Mr. Howe is 62. He'll be 63 next year. What Ms. Farrell is arguing for is because he suffered an injury and in his duty as a Chicago firefighter, that she should somehow receive a financial windfall. Because he's not able to work as a firefighter, she should essentially get money for herself. This is what Mr. Howe is relying on. He relied on his income as a firefighter prior to his disabling injury. He's continuing to rely on his income through the disability benefits to support himself. When he retires, which he will have to do next year, he will rely on his retirement pension to support himself. It shouldn't be a windfall to Ms. Farrell because he suffered an injury through the course of his duty as a Chicago firefighter. What about the argument that he was already intended, before this incident took place, he was already intended to retire? And he basically already had started putting it in the paperwork? That argument is irrelevant, Your Honor. It's a red herring. Essentially, the question is, is Ms. Farrell going to receive what the parties intended for her to receive? Will she receive half of the meritable portion of the pension? The answer to that unequivocally is yes. She will receive that when he retires. He could have retired before his injury. He had the eligibility to retire before he suffered his injury. He simply chose not to. He chose to continue working. The man decided he enjoyed his job, or for whatever reason, and he wanted to continue in his active employment. There's no difference between that and the case before you. It's one thing to engage in retirement planning for some time in the future. We all do it before we're eligible to retire. The fact is, he didn't. He never did retire. He never submitted the paperwork to make his retirement effective. That never happened. All that's happened is he suffered an injury. And as a result of that injury, he can't work as a firefighter. And so he's receiving his disability benefits. So the agreement is not ambiguous in your mind? That's correct, Your Honor. The agreement is not ambiguous. And it quite clearly differentiates between the pension and the remaining interest in the fireman's annuity and benefit fund. Also, between that, the method of execution of the division of that piece of property, all of the other things that are in this settlement agreement clearly indicate that the parties never intended that if Mr. Farrell, excuse me, Mr. Howe, suffered an injury and couldn't work, that she would receive a portion of the disability benefits. I'd like to talk briefly about the cases that were cited in the briefs. I believe the case that's most on point is Enroy v. Marriage of Davis. That's a third district case. And in Davis, the husband worked for the suburban Teamsters of Northern Illinois. Davis is the only case that's cited in the briefs in which there was a mandatory age of retirement. In Davis, that mandatory age of retirement was 60. And the court ruled, and the appeal court conceded incorrectly, that the agreement did not award the wife any disability benefits. And it relied largely on that mandatory retirement age because he was going to have to retire at 60, and then she was going to get her share of the retirement pension. And the court also looked at the agreement and said, there's a complete absence of any reference to disability benefits in this agreement. If the parties had intended to award some disability benefits, they could have done that in the agreement. The lack of that language was persuasive to the appellate court. And the appellate court had some language in the Davis case that I think is really important to the case here. The appellate court stated that to accept the wife's argument, we must find that the parties intended that if the husband suffered a disabling injury and had to take a devastating reduction in his means of support, wife would enjoy a concomitant windfall. To accept the husband's argument, then wife would receive the same benefits she would have received had husband kept working until age 60, while husband receives disability benefits as a substitute for his earned income. That's exactly what's happening here. The only difference is instead of age 60, it's age 63. Otherwise, it's identical. The cases that the appellate relies upon, Benson, Schertz, and Marshall, are all reasonably distinguished by the mere fact that there was no mandatory retirement age. In fact, definitely in Benson and Schertz, and I forget if this is also true in Marshall, but in Benson and Schertz expressly, the husband testified that he had no intention of ever getting off disability benefits, that he would remain on the disability benefits. Because it was the most financially beneficial. Because it was the most financial. He acted in his own self-interest, which is understandable, but in doing so he would have prevented the wife from receiving what she had bargained for in the settlement agreement, which was a share of the retirement pension. That's not the case here. She was still, he can't stay on disability benefits past the age of 63, which would be next year. She's going to get her share of the retirement pension next year. It's also worth noting that in Benson, at the time of the hearing in the trial court, the husband was 65 years old. Here, at 65, Mr. High will already have been retired for two years, and Ms. Farrell will have been receiving her share of the retirement pension for two years. So we think that Benson and Schertz, for those reasons, are an opposite. It's also worth noting that the pension statute is different in Benson and Schertz than it is here. The pension statute in those cases involved municipalities under 500,000 people, and the portion of the pension statute for municipalities under 500,000 people refers to a disability as a disability pension. I believe it's 11 times in that section of the statute is how it's referred to. Whereas the section of the pension statute here in a municipality over 500,000 people refers to it as a disability benefit. The term pension does not appear once. I have a practical question in terms of the facts. Is your client still paying into the pension fund? I believe through the disability benefits, I believe there is continued paying into the pension fund. Isn't the common thread through all the cases that all of you have cited, is this more like a retirement benefit or is it more like a compensation package? Laws kind of come around to that type of question. Correct, Your Honor, and ultimately there's a question. Is the disability benefit, is that a replacement for income or a replacement for retirement? In the cases cited by the appellant, it's a replacement for retirement. In those cases, the husband was, like I mentioned, Benson at the time of the trial court hearing, he was 65. In Schertz, the husband was at least 63, perhaps older, I'm not sure, but I know he was at least 63. And because the husband could remain a disability forever, it was akin to a replacement for a retirement benefit. Here, it's a replacement for an income benefit. Mr. Howe is only 62 and he has to retire at 63, which he will end up doing. So that is a clear distinction. You're absolutely right. So it's the guiding principle. I don't know if we have to pick one case over another. No, and in fact, when the case is cited, I want to say it's Schertz, but when the case is cited, it says this is a factual question, right? And they do vary. There is some, you know, the appellant argues that there's some split in the case law, but I don't really think there is because you have these two separate lines of cases of whether or not, to Your Honor's point, whether or not it's an income replacement or a retirement placement. But because the case before you is clearly an income replacement because you will have to retire at 63, I don't think there's a question that this is an agreement that is unambiguous, that Ms. Farrell will receive exactly what she bargained for, exactly what the parties intended, and that this Court should affirm the decision of the trial court. As you have been arguing that the settlement agreement between these parties is very specific in many areas, and one of the areas where it seems to be very specific is the exhibit that's attached, and it sets out what the net value is going to be with regard to the pension, and then also how much Joanna Thomas is going to receive. So the question we had for counsel was, was that determined as of the age of 63 onward? Do you know? Unfortunately, I don't. A lot of counsel I was not representing Mr. Howe during the pre-decreed divorce case. But what I can tell you is the method of determining the present value of the pension is through an actuarial analysis. And the Court, you cannot do an actuarial analysis of disability benefits. You don't know when a disability will occur. You don't know when or if a disability will remediate. So there isn't an ability to present value a disability benefit like the one that Mr. Howe is receiving. So the fact that they did do that present value of the pension shows that the intention of the parties was only to divide the retirement pension and that the intention of the parties was toward all remaining interest, which includes disability benefits, to Mr. Howe. If the Court has no further questions, I thank you for your time. Thank you very much. Thank you.